Gail M. Kelly
**Conway, Farrell, Curtin & Kelly, P.C.**
48 Wall Street - 20th Floor
New York, New York 10005
(212) 785-2929
Direct Dial: (212) 993-9340
Fax No. (212) 785-7229
Email: gkelly@conwayfarrell.com
*Local Counsel for Defendant,*
*HARTFORD INSURANCE COMPANY OF THE MIDWEST*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHENOROCK SHORE CLUB, INC.,

                     Plaintiff,                  **CASE NO. 7:14-cv-07148-VB**


       -against-

HARTFORD INSURANCE COMPANY OF THE MIDWEST,

                     Defendant.
-------------------------------------------------------------------X

### ANSWER AND AFFIRMATIVE DEFENSES

      DEFENDANT, Hartford Insurance Company of the Midwest ("Hartford"), a Write-Your-Own ("WYO") Program insurance carrier participating in the United States Government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] appears herein in its "fiduciary"[2] capacity as the "fiscal agent of the United States,"[3] and responds as follows to the Plaintiff's Complaint:

      Defendant responds as follows to the individual paragraphs of the Plaintiff's Complaint:

---

[1] 42 U.S.C. § 4001, et seq.
[2] 44 C.F.R. § 62.23(f).
[3] 42 U.S.C. § 4071(a)(1); *Jacobson v. Metropolitan Prop. & Cas. Ins Co.,* 672 F.3d 171, 175 (2d Cir. 2012).

## NATURE OF THIS ACTION

1. The allegations of paragraph 1 of the Complaint are admitted only to the extent that this suit arises from the flood insurance claim of Plaintiff. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

2. The allegations of paragraph 2 of the Complaint are admitted upon information and belief.

3. The allegations of paragraph 3 of the Complaint are admitted. Further answering, the Defendant acted in its capacity as a WYO Program carrier participating in the NFIP at all relevant times.

4. The allegations of paragraph 4 of the Complaint are admitted. Further answering, the Defendant acted in its capacity as a WYO Program carrier participating in the NFIP at all relevant times.

## JURISDICTION AND VENUE

5. The allegations of paragraph 5 are admitted.

6. The allegations of paragraph 6 of the Complaint are admitted to the extent that this Court has original, exclusive jurisdiction over this SFIP claim. Further answering, jurisdiction is proper to this Court pursuant to 42 U.S.C. § 4072. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

7. The allegations of paragraph 7 of the Complaint are admitted to the extent that venue in this Court is proper. Further answering, venue is proper pursuant to 42 U.S.C. § 4072 and 44 C.F.R. Pt. 61, App. A(2), Art. VII(R). All remaining allegations are denied as

written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

## FACTUAL AVERMENTS

8. The allegations of paragraph 8 of the Complaint are admitted to the extent that SFIP No. 99011111682012 was in effect for the described property at the time of Super Storm Sandy. It is further admitted that the subject property included $500,000.00 as the limit of liability for building coverage. Further answering, the Plaintiff's "coverage" is subject to the limitations, conditions, and exclusions contained within the SFIP. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

9. The allegations of paragraph 9 of the Complaint are admitted.

10. The allegations of paragraph 10 of the Complaint are admitted only to the extent that the subject property received some flood damage as the result of Super Storm Sandy. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

11. The allegations of paragraph 11 of the Complaint are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

12. The allegations of paragraph 12 of the Complaint are admitted only to the extent that an estimate in the total amount of $810,461 was submitted by the Plaintiff. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

13. The allegations of paragraph 13 of the Complaint are admitted to the extent that payment in the amount of $131,873.81 was issued to the Plaintiff by Defendant based upon the

estimate of an independent adjuster and other documentation provided and subject to the terms, conditions, limitations, and exclusions of the SFIP. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

14. The allegations of paragraph 14 of the Complaint are admitted to the extent that the Plaintiff submitted a proof of loss form for the net claim amount of $350,526.19 on or about March 12, 2014. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

15. In response to the allegations of paragraph 15 of the Complaint, it is admitted that FEMA sent a letter to the Plaintiff's public adjuster on or about April 4, 2014 regarding the claim. The letter itself is the best evidence of its contents. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

16. The allegations of paragraph 16 of the Complaint are admitted to the extent that documents were provided by the Plaintiff to the Defendant in reference to the claim. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

17. The allegations of paragraph 17 of the Complaint are admitted to the extent that a proof of loss form for the net claim amount of $282,710.19 was submitted by the Plaintiff on or about April 24, 2014. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

18. The allegations of paragraph 18 of the Complaint are admitted to the extent that a rejection letter was sent on or about June 4, 2014. The letter itself is the best evidence of

its contents. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

19. The allegations of paragraph 19 of the Complaint are admitted to the extent that the Plaintiff's public adjuster submitted an appeal to FEMA. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

20. The allegations of paragraph 20 of the Complaint are admitted to the extent that a rejection letter was sent on or about June 4, 2014. The letter itself is the best evidence of its contents. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

21. The allegations of paragraph 21 of the Complaint are admitted to the extent of the one-year period within which to file suit is provided for in SFIP Article VII(R). It is further admitted that Hartford issued a denial letter on September 6, 2013. All remaining allegations are denied as written as they contain, or call for, a legal conclusion on a substantive issue of law and/or fact.

22. The allegations of paragraph 22 of the Complaint are denied.

**AS AND FOR A FIRST CLAIM**
**(Breach of Contract)**

23. In response to paragraph 23 of the Complaint, the Defendant reasserts its responses to the preceding allegations.

24. The allegations of paragraph 24 of the Complaint are denied.

25. The allegations of paragraph 25 of the Complaint are denied.

26. The allegations of paragraph 26 of the Complaint are denied.

27. The allegations of paragraph 27 of the Complaint are denied.

28. The allegations of the "WHEREFORE" paragraph of the Complaint are denied. It is further denied that the Plaintiff is entitled to the relief requested. The Plaintiff is not entitled to attorney fees and interest, as such claims are preempted and barred by federal constitutional, jurisprudential, and statutory law.

## AFFIRMATIVE DEFENSES

Defendant, Hartford Insurance Company of the Midwest, asserts the following affirmative defenses:

### 1. NO CAUSE OF ACTION

The Plaintiff's Complaint fails to set forth any claim upon which relief may be granted by this Honorable Court.

### 2. NO RIGHT OF ACTION

There are no "implied" private rights of action available in the context of the comprehensive and pervasive statutory and regulatory scheme that is commonly referred to as the National Flood Insurance Program. To the extent that the Plaintiff seeks any recovery from Hartford under federal law beyond what is provided for in the text of the SFIP, Hartford affirmatively asserts that no right of action exists.

### 3. JURISDICTION AND VENUE

Jurisdiction and venue over this dispute are exclusive to this Honorable Court pursuant to 42 U.S.C. § 4072, and 44 C.F.R. Pt. 61, App. A(2), Article VII(R) and Article IX. Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. §§ 1331, 1332 and 1337. There is supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

### 4. THE INSURANCE AGREEMENT

The responsibilities of the WYO Program carrier, Hartford, to the Insured, and vice versa, are provided in the insuring agreement of the SFIP. 44 C.F.R. Pt. 61, App. A(2) at "Agreement." Pursuant to that regulation/contract, the Insured has no cause to complain of the strictures of the NFIP, for it agreed to be bound by all program rules as a condition of the policy of flood insurance purchased.

### 5. KNOWLEDGE OF FEDERAL LAW AND SFIP PROVISIONS

As a matter of federal law, the Insured is charged with knowledge of the terms and conditions of the SFIP and the requirements under the NFIP. Furthermore, the Insured is responsible for reading the SFIP, as well as any renewal notices, and is presumed to know the provisions of the policy, including the insurer's limits of liability, coverages and exclusions.

### 6. FISCAL AGENT STATUS

By statute, Hartford is a "fiscal agent" of the United States. 42 U.S.C. § 4071(a)(1). By regulation, Hartford's fiduciary duty is owed to FEMA, and is "to assure that any taxpayer funds are accounted for and appropriately expended." 44 C.F.R. § 62.23(f). Also by regulation, all company claim standards are subordinate to FEMA's nationally uniform and preset claims standards that FEMA has devised on authority of 42 U.S.C. § 4019. Those standards govern all of the WYO Program companies and all of the Insured in a nationally uniform manner.

### 7. ROLE OF ADJUSTER

The insurance adjuster is provided as a courtesy only and he or she may provide the Insured with a proof of loss form and may assist the Insured in completing it. However, it is the duty of the Insured to comply with the proof of loss requirement even if the adjuster does not provide the form or help in completing it. Further, the insurance adjuster is not authorized to

approve or disapprove claims or to counsel the Insured on whether the WYO carrier will approve the Insured's claim.

### 8. DEFINITIONS

Hartford pleads 44 C.F.R. Pt. 61, App. A(2), Article II, "Definitions," as an affirmative defense, including, but not limited to, the definition of Actual Cash Value, Building, Direct Physical Loss By or From Flood, Mudflow, and Valued Policy.

### 9. LIMITATIONS OF COVERAGE A

Hartford avers as an affirmative defense those provisions and limitations of coverage set forth in the SFIP at Article III Coverage A - Building Coverage. The SFIP provides coverage for direct physical loss by or from flood to the building, subject to the limitations set forth at paragraphs 1 through 8, inclusive.

### 10. LIMITATIONS OF COVERAGE C

Hartford avers as an affirmative defense those limitations of coverage contained at Article III Coverage C - Other Coverages, at paragraphs 1 through 3, inclusive.

### 11. LIMITATIONS OF COVERAGE D

Hartford avers as an affirmative defense those limitations of coverage contained at Article III Coverage D – Increased Cost of Compliance, at paragraphs 1 through 6, inclusive.

### 12. STRICT CONSTRUCTION AND INTERPRETATION

Hartford pleads as an affirmative defense that, because all flood claims are paid directly with federal funds, strict construction of the SFIP and interpretation of the Federal Regulations is required.

### 13. CONDITIONS PRECEDENT

Hartford pleads as an affirmative defense that the SFIP expressly conditions the right to sue for further benefits under the policy upon the Insured's prior compliance with "all the requirements of the policy." In order to obtain the federal benefits that the Plaintiff is seeking under the policy, Plaintiff has the burden of proof to establish the pre-suit full, complete, truthful and detailed compliance with "all" requirements of the SFIP, including but not limited to the notice of loss, separation of property, documentation, cooperation, proof of loss, and other requirements. *See* 44 C.F.R. Pt. 61, App. A(2) and Art. VII(J), each provision of which is expressly plead as if contained *in extenso* herein.

### 14. PROOF OF LOSS REQUIREMENT

Plaintiff failed to submit a proper Proof of Loss in support of its claim for additional federal funds as per the requirements of Article VII(J) and Article VII(R) of the SFIP. Since Plaintiff failed to comply with these SFIP provisions, Plaintiff's claim for additional funds is barred.

### 15. DOCUMENTATION REQUIREMENT

Hartford asserts that Plaintiff failed to provide documentation in support of any further covered losses claimed, as required by Articles VII(J)(3) and (4)(f).

### 16. WAIVERS

The Federal Government has reserved unto itself the exclusive authority to waive program requirements. *See* 44 C.F.R. § 61.13(d), §62.23(k), and SFIP Article VII(D), which are plead as though contained *in extenso* herein. Hartford affirmatively pleads that it cannot legally waive program requirements; instead, it is required by the Constitution and judicial precedent to strictly construe and enforce all of FEMA's requirements for NFIP claims disputes.

### 17. LIMITED SCOPE OF COVERAGE

Congress made clear at the outset of the adoption of the NFIP that the actual scope of coverage would be limited via Executive Branch regulations. *See* 42 U.S.C. § 4013. As the courts have consistently recognized, the SFIP only pays for damage caused by "direct physical loss by or from flood," and even this is limited by various conditions and exclusions. Numerous economic, consequential and incidental damages arising from flooding are not covered. Indeed, many losses that would not have occurred "but for" a flood simply are outside the scope of benefits that are available under this one federal program. As such, Hartford affirmatively asserts that the scope of the Plaintiff's recovery, if any, is limited to what is available under the specific terms and conditions of her SFIP.  44 C.F.R. Pt. 61, App. A(2).

### 18. PROPERTY NOT COVERED

In an abundance of caution, Defendant avers as an affirmative defense ARTICLE IV - PROPERTY NOT COVERED, which includes those specific items of property for which coverage is not provided under the Standard Flood Insurance Policy even if the damages to those items were caused directly by or from flooding:

We do not cover any of the following:

1. Personal property not inside a building;

2. A building, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a building used as a boathouse or any structure or building into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in the Definitions section (see II.B.6.c.) whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:
 a. Used mainly to service the described location or
 b. Designed and used to assist handicapped persons, while the vehicles or machines are inside a building at the described location;

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located;

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. Buildings or units and all their contents if more than 49% of the actual cash value of the building is below ground, unless the lowest level is at or above the base flood elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment, such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act of 1990 and amendments to these Acts;

16.  Personal property owned by or in the care, custody, or control of a unit owner, except for property of the type and under the circumstances set forth under Coverage B – Personal Property;

17. A residential condominium building located in a Regular Program community.

### 19. EXCLUSIONS

Hartford avers as an affirmative defense that some or all of the Plaintiff's claims are barred by one or more of the SFIP exclusions authorized by 42 U.S.C. § 4013 and set forth in 44 C.F.R. Pt. 61, App. A(1). Hartford affirmatively pleads the following terms and conditions of Article V - Exclusions of the SFIP:

> A. We only pay for *direct physical loss by or from flood,* which means that we do not pay you for:
> 1. Loss of revenue or profits;
> 2. Loss of access to the insured property or described location;
> 3. Loss of use of the insured property or described location;
> 4. Loss from interruption of business or production;
> 5. Any additional living expenses incurred while the insured building is being repaired or is unable to be occupied for any reason;
> 6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D-- Increased Cost of Compliance; or
> 7. Any other economic loss you suffer.
>
> B. We do not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date:
> 1. The policy term begins; or
> 2. Coverage is added at your request.
>
> C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by *flood*. Some examples of earth movement that we do not cover are:
> 1. Earthquake;
> 2. Landslide;
> 3. Land subsidence;
> 4. Sinkholes;
> 5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or
> 6. Gradual erosion.
>
> We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically covered under our definition of flood (see II.A.1.c. and II.A.2.).
>
> D. We do not insure for direct physical loss caused directly or indirectly by any of the following:

      1. The pressure or weight of ice;
      2. Freezing or thawing;
      3. Rain, snow, sleet, hail, or water spray;
      4. Water, moisture, mildew, or mold damage that results primarily from any condition:
            a. Substantially confined to the dwelling; or
            b. That is within your control, including but not limited to:
                  (1) Design, structural, or mechanical defects;
                  (2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or
                  (3) Failure to inspect and maintain the property after a flood recedes;
      5. Water or water-borne material that:
            a. Backs up through sewers or drains;
            b. Discharges or overflows from a sump, sump pump or related equipment; or
            c. Seeps or leaks on or through the covered property; unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or the seepage of water;
      6. The pressure or weight of water unless there is a flood in the area and the flood is the proximate cause of the damage from the pressure or weight of water;
      7. Power, heating, or cooling failure unless the failure results from direct physical loss by or from flood to power, heating, or cooling equipment on the described location;
      8. Theft, fire, explosion, wind, or windstorm;
      9. Anything you or any member of your household do or conspires to do to deliberately cause loss by flood; or
      10. Alteration of the insured property that significantly increases the risk of flooding.
E. We do not insure for loss to any building or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

## 20. CAUSATION

Some or all of the damage claimed by the Plaintiff was the result of causes not within the scope of the SFIP, including damage that was preexisting, damage that was caused by non-covered perils (such as wind or wind-driven rain), prior flood damage to the building that had not been repaired, damage due to improper maintenance of the building and/or damage that although

caused by a flood is excluded or otherwise not covered under the SFIP. Under the doctrine of concurrent causes, all burdens of proof rest upon the Plaintiff.

## 21. GOVERNANCE OF FEMA'S GUIDELINES

Hartford is a signatory to the National Flood Insurance Act of 1968, and applicable federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B, and is authorized by the Federal Insurance Administration to issue the SFIP on behalf of the federal government under Hartford's logo. Hartford agrees to abide by all rules and regulations promulgated by the Federal Insurance Administration and the Federal Emergency Management Agency when it issues an SFIP.  Hartford does not have the authority to change, alter or interpret the underwriting or claims guidelines of the flood program. The Federal Insurance Administrator is the sole authority.

## 22. CONSTITUTIONAL ISSUES

Pursuant to the Appropriations Clause, no recovery may be allowed to the Insured beyond recoveries that are authorized and sanctioned by the Congress via the express statutes and regulations of this Program. Pursuant to the Supremacy Clause, all federal rules and regulations preempt and displace any rule or regulation of the states bearing upon the same subject matter. As the States have no power to regulate the NFIP via the congressional tender found in the McCarran-Ferguson Act, Hartford asserts under the Commerce Clause that the States have no regulatory authority over the NFIP operations of FEMA's WYO Program carriers at all.  Pursuant to the separation of powers doctrine, Hartford respectfully submits that the role of the courts in a dispute of this type is limited by the principles contained by the Supreme Court in the section on "policy" in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

### 23. PAYMENT FOR THE HANDLING OF CLAIMS

Hartford has no reason to act in bad faith or in a deceptive or unfair manner, as it receives a fee for every dollar paid to the Insured under an SFIP. *See* 44 C.F.R. Pt. 62, App. A, Art. III (C)(1).  In other words, the greater the amount paid to the Insured under an SFIP, the higher the fee the WYO Program carrier will receive from the federal government for handling the claim.

### 24. SUMS DUE AND OWED PREVIOUSLY PAID

Hartford avers that all sums due and owed under the SFIP have been paid.

### 25. CREDIT FOR PRIOR PAYMENTS

Hartford asserts the right to a credit for any claims payments that have already been made and/or which might be made during the pendency of this action, but prior to final judgment.

### 26. LOSS PAYEES

In the event of any recovery by the Insured, Hartford affirmatively asserts the mortgage clause of the SFIP, and asserts that the name of any lending institution or other loss payee must be included in any judgment or payment in this case. 44 C.F.R. Pt. 61, App. A(2), Art. VII(Q). If there are other entities, e.g., Small Business Administration, that are entitled to have their interests protected on any further checks, then those requirements are plead herein as well.

### 27. IMPROPER PAYMENTS INFORMATION ACT

Unless Plaintiff can establish that they have submitted documentation that meets all requirements under the SFIP and FEMA's guidelines, any payment under the NFIP is barred by the Improper Payments Information Act of 2002. 31 U.S.C. § 3321 note (Supp. III 2003).

### 28. OVERHEAD AND PROFIT

 In an abundance of caution, Hartford asserts as an affirmative defense that, if the subject property has been sold prior to repairs being made, Plaintiff is not entitled to overhead and profit.

Further, Hartford asserts as an affirmative defense the NFIP Adjuster Claims Manual and FEMA Bulletins regarding overhead and profit.

### 29. PREEMPTION

All state law based extra-contractual and tort claims, including but not limited to claims for bad faith, negligence, punitive damages, attorney's fees and costs, and court costs, arising out of the handling of the flood loss claim under the SFIP and/or the administration of an existing SFIP are preempted and barred by federal law.

### 30. FEDERAL LAW GOVERNS

The SFIP in question in this lawsuit was written by the U.S. Government (not Hartford), pursuant to 42 U.S.C. § 4013, and may be found in its entirety at 44 C.F.R. Pt. 61, App. A(2). As the federal government is the ultimate underwriter of the NFIP, it has been determined that federal (not state) law governs. *See* Article IX of the SFIP.

### 31. NO INTEREST RULE

Because U.S. Treasury funds are used to pay for flood loss claims, any claims for pre-judgment or post-judgment interest are barred by federal law. Thus, the "No Interest Rule" applies.

### 32. CLAIM ADJUSTMENTS

Hartford pleads 44 C.F.R. 62.23(i)(1) and (2), in their entirety, as though set forth *in extenso* herein. Under the terms of the "Arrangement," WYO Companies will adjust claims in accordance with general Company standards, guided by NFIP Claims manuals. Further, the WYO Company may use its staff adjusters, independent adjusters or both.

### 33. NO BREACH, CAUSATION OR DAMAGES

There was no breach of any duty owed by Hartford to the Plaintiff, and there was no causation and no damage attributable to any act, alleged error or alleged omission by Hartford in this case.

### 34. NO WAIVER OR ESTOPPEL

There can be no waiver and estoppel against the WYO Program carrier relating to the NFIP.

### 35. LIKE KIND AND QUALITY

If recovery is allowed, it is limited to like kind and quality.

### 36. LOSS SETTLEMENT

In an abundance of caution, Defendant pleads as an affirmative defense Article VII(V) *Loss Settlement*, which provides the method for settling losses. This section states:

We will pay the least of the following amounts after application of the deductible:

1. The applicable amount of insurance under this policy;

2. The actual cash value; or

3. The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

### 37. ALLEGATIONS NOT ADMITTED ARE DENIED

All allegations contained in the Complaint which are not specifically admitted are denied.

### RESERVATION OF RIGHTS

To the extent permitted by law, Hartford reserves the right to supplement and amend this answer and to assert additional affirmative defenses as future discovery may warrant and require.

**WHEREFORE**, Defendant, Hartford Insurance Company of the Midwest, prays that this Answer and Affirmative Defenses be deemed good and sufficient, and all claims of the Plaintiff will be dismissed with prejudice, and all costs and expenses will be taxed to the Plaintiff.

Dated: New York, New York
October 1, 2014

                                                 Respectfully Submitted,

                                                 */s/ Gail M. Kelly*_____
Gail M. Kelly
**Conway, Farrell, Curtin & Kelly, P.C.**
48 Wall Street - 20th Floor
New York, New York 10005
(212) 785-2929
Direct Dial: (212) 993-9340
Fax No. (212) 785-7229
Email: gkelly@conwayfarrell.com
*Local Counsel for Defendant,*
HARTFORD INSURANCE COMPANY OF THE MIDWEST

And

                                                 */s/ Gino R. Forte*_____
Gino R. Forte
*To Be Admitted Pro Hac Vice*
NIELSEN, CARTER & TREAS, LLC
3838 North Causeway Blvd., Ste. 2850
Metairie, LA 70002
T. 504.837.2500
F. 504.832.9165
Email: gforte@nct-law.com
*National Counsel for Defendant,*
HARTFORD INSURANCE COMPANY OF THE MIDWEST

## CERTIFICATE OF SERVICE

      I hereby certify that on October 1, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

RUSSO & BURKE
600 Third Avenue, 15th Floor
New York, NY 10016
212-557-9600
**Attorneys for Plaintiff, SHENOROCK SHORE CLUB, INC.**

                                                                                 */s/ Gail M. Kelly*
                                                                                   Gail M. Kelly